UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GUANGYU WANG, | Case No. 3:18-cv-00075-MMD-CBC |
| Plaintiff, | ORDER |
| v. | |
| NEVADA SYSTEM OF HIGHER EDUCATION, | |
| Defendant. | |

## I. SUMMARY

This is a Title VII retaliation case brought by a *pro se* plaintiff. The Court previously construed Plaintiff Guangyu Wang's First Amended Complaint ("FAC") as advancing five independent claims for retaliation and granted summary judgment in favor of Plaintiff on the first two of those claims. (ECF No. 50 at 1, 3.) The parties now have filed cross-motions for summary judgment as to the following issues: (1) damages in connection with the first two claims (ECF Nos. 52, 78); (2) liability in connection with the third claim (ECF Nos. 53, 56); and (3) liability in connection with the fourth claim (ECF Nos. 61, 68). The Court has reviewed those motions as well as the parties' responses (ECF Nos. 54, 55, 59, 67, 72, 81) and replies (ECF Nos. 57, 58, 60, 70, 73, 84).[1] For the following reasons, the Court grants summary judgment in favor of Defendant Nevada System of Higher Education as to each issue raised.

## II. BACKGROUND

The following facts are undisputed unless otherwise indicated.

///

---

[1]The Court also has reviewed the notice of corrections (ECF No. 92) Plaintiff filed, which corrects clerical errors in some of the briefing before the Court. The Court also has reviewed Plaintiff's notices of manual filing (ECF Nos. 83, 76).

Plaintiff began working as a "Research Assistant Professor" at the University of Nevada Reno School of Medicine ("UNR Med") on October 1, 2010. (ECF No. 53 at 3.) Plaintiff's position was funded with a grant ("Grant") from the American Heart Association ("AHA"). (*Id.* at 3; ECF No. 21 at 48-53 (Ex. 10, Ex. 11).) Plaintiff received notice on June 15, 2012, that his employment would terminate 180 days later. (ECF No. 53 at 3; ECF No. 21 at 159 (Ex. 39).) Plaintiff was discharged on December 12, 2012. (ECF No. 21 at 161 (Ex. 40).) Plaintiff filed charges of discrimination with the Nevada Equal Rights Commission ("NERC") and the Equal Employment Opportunity Commission ("EEOC") as well as a lawsuit. (ECF No. 53 at 3; ECF No. 55 at 4.) The charges and the lawsuit were settled around April 11, 2013. (ECF No. 55 at 4; ECF No. 21 at 13-23 (Ex. A, Ex. B).)

Plaintiff alleges that despite the settlement, Plaintiff's former supervisor—a non-party named Iain Buxton who heads up UNR Med—intentionally retaliated against Plaintiff for filing the charges of employment discrimination and the lawsuit in a number of ways: (1) by making disparaging comments about Plaintiff and unfavorable references to the fiscal official at UNR Med (Charlene Hart) and the hiring official at UC Davis (Peter Cala); (2) by disclosing Plaintiff's previous lawsuit against Defendant as a negative reference to the hiring official at UC Davis; (3) by depriving Plaintiff of funding from the Grant; (4) by refusing to transfer Plaintiff's lab chemical and biological products and supplies ("Lab Supplies") from UNR to UC Davis and by discarding them without Plaintiff's consent; and (5) by threatening Plaintiff and damaging his good reputation when he was prohibited from accessing the UNR campus. (ECF No. 21 at 8-9.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is

a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 ///

3

F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV.    CROSS-MOTIONS REGARDING DAMAGES FOR FIRST AND SECOND CLAIMS (ECF NOS. 52, 78)

The Court previously granted summary judgment in favor of Plaintiff on his first and second claims for retaliation. (ECF No. 50 at 13.) Both claims are functionally identical and essentially allege that Plaintiff's supervisor at UNR Med—Iain Buxton—told the hiring official at UC Davis—Peter Cala—about Plaintiff's lawsuit against UNR Med to prevent UC Davis from hiring Plaintiff. (ECF No. 21 at 7; ECF No. 50 at 10, 13.) Plaintiff now asserts that he is entitled to several different kinds of relief related to those claims, including reinstatement, backpay, compensatory damages, and pain and suffering damages. (ECF No. 52 at 2-3.)

Defendant generally contends that Plaintiff cannot demonstrate any causal relationship between damages he has suffered and the Buxton-Cala conversation. (ECF No. 78 at 6.) Plaintiff counters that the Buxton-Cala conversation caused his start date at UC Davis to be postponed from June 1, 2013 to October 1, 2013 (ECF No. 81 at 8); caused Cala and Plaintiff's supervisor at UC Davis—Jie Zheng—to refrain from renewing his appointment at UC Davis (*id.* at 9); caused a negative workplace atmosphere to develop at UC Davis (*id.* at 18); and caused harm to Plaintiff's good reputation (*id.* at 25). The Court addresses each of these causal relationships below and grants summary judgment in favor of Defendant as to the issue of damages for Plaintiff's first and second claims.

### A.    START DATE

Plaintiff alleges that his start date was postponed from June 1, 2013 to October 1, 2013—causing him to go without pay for several months—because Buxton told Cala about Plaintiff's lawsuit against UNR Med. (ECF No. 81 at 8.) But the evidence before the Court unequivocally shows that Plaintiff's start date was postponed because the Grant was not transferred to UC Davis in time for Plaintiff to begin on June 1, 2013. And the AHA—not UNR Med or UC Davis—was responsible for that.

4

Plaintiff received an offer letter from UC Davis on June 12, 2013, indicating that his "appointment is effective June 1, 2013 through June 30, 2014." (ECF No. 21 at 55 (Ex. 12).) Plaintiff then began the process of transferring his Grant from UNR Med to UC Davis around June 17, 2013, when he provided UNR Med with a letter requesting such a transfer. (ECF No. 78-18 at 2.) Buxton and Hart (the fiscal officer for UNR Med) had both signed the request by June 24, 2013. (*Id.*) UC Davis officials signed a letter supporting transfer of the Grant on June 25, 2013. (ECF No. 78-20 at 2.) Plaintiff submitted these letters to the AHA on July 1, 2013. (ECF No. 78-21 at 2.) The AHA did not approve the transfer of the Grant until August 29, 2013. (ECF No. 78-23 at 2.)

Defendant asserts that the transfer of the Grant was out of its control after Buxton and Hart signed the transfer request from UNR Med. (ECF No. 78 at 11.) Plaintiff provides no evidence to the contrary, and Defendant also cites Plaintiff's testimony[2] that UC Davis did not contribute to the delay in any way. (*Id.* (citing ECF No. 78-2 at 13).) Based on the evidence before the Court, no reasonable juror could conclude that Buxton's conversation with Cala delayed the transfer of the Grant. Indeed, it only took about two weeks for two large public universities to complete the paperwork Plaintiff needed to transfer the Grant. Accordingly, the Court finds that Plaintiff has failed to show the Buxton-Cala conversation caused his start date to be postponed.

**B.   REAPPOINTMENT**

Plaintiff alleges that his position at UC Davis was not renewed because Buxton told Cala about Plaintiff's litigation against UNR Med, but the evidence before the Court contradicts Plaintiff's position and shows that Plaintiff's poor performance was the basis for his nonrenewal. First, there is the testimony of Cala and Zheng themselves. When asked whether his "knowledge of any litigation that Dr. Wang had initiated or maintained figure[d] in any way into [Cala's] decision to sign the letter of non-reappointment," Cala answered: "Absolutely not." (ECF No. 78-2 at 20.) Zheng responded similarly. (ECF No. ///

---

[2]The testimony comes from a hearing held at UC Davis on January 28, 2015. (ECF No. 78-1 at 2.)

78-3 at 10.) Cala and Zheng also testified that they knew about Plaintiff's litigation with UNR Med before hiring him and decided to proceed with hiring him anyway. (ECF No. 78 at 6 (citing ECF No. 78-2 at 17; ECF No. 78-3 at 10, 13).) If Cala and Zheng were concerned about Plaintiff's lawsuit, they probably would not have hired Plaintiff in the first place.

Defendant also has introduced evidence that Plaintiff's nonrenewal was based on his poor performance in the lab. Cala testified that "Dr. Wang wasn't performing to the level of expectations. That he wasn't integrated into the laboratory. That other members of the laboratory were a bit put off because they . . . would extend a helping hand to Dr. Wang but the reciprocity didn't exist." (ECF No. 78-2 at 18.) Cala also testified that Dr. Wang could not perform "even the simple things . . . without some kind of assistance." (*Id.*) Zheng showed Cala revisions Zheng had made to Plaintiff's grant proposal, and Plaintiff's "writing was indecipherable." (*Id.*) As a result, Zheng had edited "virtually the entire thing." (*Id.*) Zheng testified that he had never supervised a researcher at Plaintiff's level who performed so poorly. (*See* ECF No. 78-3 at 9.) Zheng also testified that he devoted substantial time and resources to supervising Plaintiff: "I was a little disappointed that the first draft after the extensive discussion came out like this. I pretty much had to rewrite it, as you can see. Of course, I didn't anticipate that I had to put in so much time on this. Frankly, it was obvious to me that if I wrote this it would be a lot easier." (*Id.* at 7.) Zheng also testified that he had to intervene when Plaintiff repeatedly contacted a journal editor who had rejected an article Plaintiff submitted for publication. (*Id.* at 6.)

Plaintiff offers no response to Zheng and Cala's own testimony that their knowledge of his litigation had nothing to do with their nonrenewal decision. Rather, Plaintiff attempts to piece together circumstantial evidence to show that his performance was satisfactory. Plaintiff contends that his job description "had nothing to do with whether lab members help each other or the amount of time or effort Jie Zheng spent for Plaintiff or Jie Zheng's intervention," (ECF No. 81 at 12), but it is common sense that professional work requires an ability to work well both independently and with others. Plaintiff also cites his annual

6

appraisal at UNR Med, which indicates his performance was "Excellent." (*Id.* at 14 (citing ECF No. 21 at 62 (Ex. 14)).) But this performance evaluation does not rebut Cala and Zheng's own testimony that their knowledge of his litigation against UNR Med had nothing to do with their nonrenewal decision. Accordingly, the Court finds that Plaintiff cannot show the Buxton-Cala conversation caused his nonrenewal.

### C.    HOSTILE WORK ENVIRONMENT

Plaintiff alleges that the Buxton-Cala conversation caused a hostile work environment to develop at UC Davis. (ECF No. 21 at 9.) Specifically, Plaintiff alleges that he was not supported to attend a professional meeting in San Francisco; he was not introduced to other faculty members at UC Davis; his faculty bio was never posted on the department website; he was never notified of the department faculty meeting or Christmas party; his office or lab was unsecured; he was not invited to speak with external seminar speakers; he was isolated from several faculty activities; and UC Davis failed to provide Plaintiff with a fair annual appraisal regarding his excellent performance. (*Id.*)

Defendant argues that Plaintiff did not experience a hostile work environment and that even if he did, it had nothing to do with Buxton's disclosure of Plaintiff's lawsuit to Cala. (ECF No. 78 at 12-16.) To show that Plaintiff did not experience a hostile work environment, Defendant cites to Plaintiff's hearing testimony. There, Plaintiff testified that Cala "is a very nice professor. He almost every day, because his office is opposite my lab so we can see everything. He is very nice. He treats us very nice, nicely. I have to mention this, he is a good professor." (ECF No. 78-1 at 19.) Plaintiff also testified that he was not subject to any racially motivated comments while at UC Davis. (ECF No. 78-2 at 14.)

Defendant also argues that Plaintiff has not connected any of his grievances to the Buxton-Cala conversation. (ECF No. 78 at 15.) The Court agrees. Plaintiff has not produced any evidence to show that the various grievances he alleges were the result of Buxton's conversation with Cala.

///

///

## D. REPUTATIONAL HARM

Plaintiff alleges that the Buxton-Cala conversation harmed his reputation. (ECF No. 81 at 25.) But Plaintiff does not specifically allege how his reputation was harmed or any resulting damages. (*See id.* at 25-26.) Plaintiff contends that he was unable to secure "any equal employment opportunity in USA to explore the life science and to pursue happiness." (*Id.* at 26.) But Plaintiff has not introduced evidence to show that he applied for jobs and was rejected based on damage to his reputation caused by the Buxton-Cala conversation.

Given that Plaintiff cannot show that any of his harm was caused by the Buxton-Cala conversation, the Court will grant summary judgment in favor of Defendant on the issue of damages in connection with Plaintiff's first and second claims for retaliation. The Court will deny Plaintiff's motion for summary judgment on damages as to those claims.

## V. CROSS-MOTIONS FOR SUMMARY JUDGMENT ON THIRD CLAIM (ECF NOS. 53, 56)

In his third claim, Plaintiff alleges that Defendant improperly paid Plaintiff a settlement of $21,589.02 mostly out of Plaintiff's Grant rather than out of Defendant's funds. (ECF No. 21 at 8.) Defendant has introduced evidence that the settlement payments actually came from the State of Nevada Tort Claim Fund and the Nevada System of Higher Education. (ECF No. 56 at 8 (citing ECF No. 56-1 at 2, 4; ECF No. 56-2 at 2-3; ECF No. 56-7 at 2).) Plaintiff has produced no evidence to the contrary. (*See generally* ECF No. 59.) Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's third claim for relief.

Plaintiff advances two additional theories of liability that seem to lie outside the scope of the FAC: (1) Defendant only paid Plaintiff half-time salary and benefits during the 180-day period from June 1, 2012 through December 31, 2012; and (2) Plaintiff's salary and benefits for that time period should have been paid from Defendant's funds rather than his Grant. (ECF No. 59 at 6-8.) Nevertheless, the Court will address these contentions. Defendant introduces evidence in the form of a memorandum of understanding—signed by Plaintiff—stating that Plaintiff's salary during that time period

would come from the Grant and that he would be paid for half-time work. (ECF No. 60-1 at 2.) Plaintiff does not dispute this evidence. The Court thus grants summary judgment in favor of Defendant on Plaintiff's third claim to the extent it is based on these two additional theories of liability.

Having granted summary judgment in favor of Defendant on Plaintiff's third claim for relief, the Court will deny Plaintiff's cross-motion for summary judgment on that claim.

## VI.   CROSS-MOTIONS FOR SUMMARY JUDGMENT ON FOURTH CLAIM (ECF NOS. 61, 68)

Plaintiff alleges in his fourth claim that Defendant retaliated against him by refusing to transfer the Lab Supplies from UNR Med to UC Davis and by discarding them without Plaintiff's consent on or about October 15, 2013. (ECF No. 21 at 8-9.) The parties dispute whether the Lab Supplies belonged to UNR Med or Plaintiff. (ECF No. 68 at 2; ECF No. 61 at 4.) The Court finds that the undisputed evidence supports a finding that the Lab Supplies belonged to UNR Med.

The parties signed an award agreement form that does not expressly address ownership of the Lab Supplies. (ECF No. 68-3 at 2-4.) But the agreement provides that UNR Med's policies and practices control in the absence of a pertinent contractual provision. (*Id.* at 4 ("In accepting an Award from the American Heart Association (AHA), the Awardee and the Institution assume the obligation to expend Award for the purposes set forth in the Research Project application submitted to the AHA, and in accordance with the regulations and the policies governing the AHA Award programs or, where not specified, consistent with the policies and practices of the Institution.").) UNR Med policies provide that any items purchased with UNR Med funds—including funds received through a grant—belong to UNR Med. (ECF No. 68-1 at 2 (citing various policy provisions).)

In addition, Defendant introduces evidence that Plaintiff purchased the Lab Supplies using a credit card issued by UNR Med and did not pay sales tax on the purchases. (ECF No. 68 at 8 (citing ECF No. 68-4 at 2).) The Court finds that this evidence also shows that the Lab Supplies belonged to UNR Med. The purchasing cardholder

agreement signed by Plaintiff indicated that the card "cannot" be used "for the purchase of goods and services of a personal nature and that the purchase of such goods and services shall be deemed an improper use of the purchasing card." (ECF No. 68-7 at 3.) In addition, the sales tax exemption letter issued to Defendant states that "purchases . . . made by the Nevada System of Higher Education" are exempt from sales tax and the "exemption applies only to the above named organization [NSHE] and is not extended to individuals, or contractors or lessors to or for such organizations." (ECF No. 68-6 at 2.)

Given that the Lab Supplies were purchased with funds entrusted to UNR Med, with a university credit card, and using a sales tax exemption that belongs to the university, the Court finds that no reasonable juror could conclude that the Lab Supplies belonged to Plaintiff. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's fourth claim and deny Plaintiff's cross-motion for summary judgment on that claim.

Plaintiff argues that the award agreement form identifies Plaintiff as the owner of the Lab Supplies, but the provision Plaintiff cites conditioned the award of funds on the parties' acceptance of the terms. It did not specify Plaintiff as the owner of lab supplies purchased with the Grant. (*See* ECF No. 72 at 5 ("Awardee and Institution acknowledge and agree that the award of any funds by the American Heart Association, Inc. (the AHA) shall be subject to Awardee providing the information as requested on this form and acceptance of the terms and conditions attached hereto, as shown by Awardee's and Institution's authorized signatures set out below.").)

Plaintiff also cites the letter requesting transfer of the Grant from UNR Med to UC Davis because the letter identifies the Grant as "my [Plaintiff's] AHA grant." (*Id.*) This letter does not establish that the Grant funds or lab supplies purchased with Grant funds belonged to Plaintiff, particularly in light of the undisputed evidence produced by Defendant that the Lab Supplies belonged to UNR Med.

///

1    Plaintiff makes a similar argument based on a memorandum he sent to the

2    Department of Pharmacology referring to the Grant as "[m]y AHA grant." (*Id.* at 8 (citing

3    ECF No. 37 at 25 (Ex. 61)).) Plaintiff's use of a possessive pronoun to refer to the Grant

4    does not establish that the Lab Supplies belonged to him in light of Defendant's undisputed

5    evidence to the contrary.

6    **VII.    CONCLUSION**

7    The Court notes that the parties made several arguments and cited to several cases

8    not discussed above. The Court has reviewed these arguments and cases and determines

9    that they do not warrant discussion as they do not affect the outcome of the motions before

10   the Court.

11   It is therefore ordered that Defendant's motions for summary judgment (ECF Nos.

12   56, 68, 78) are granted. The Court grants summary judgment in favor of Defendant as to

13   the issue of damages in connection with Plaintiff's first and second claims. The Court also

14   grants summary judgment in favor of Defendant on Plaintiff's third and fourth claims.

15   It is further ordered that Plaintiff's motions for summary judgment (ECF Nos. 52,

16   53, 61) are denied.

17   DATED THIS 8th day of May 2019.

19   _____
     MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE